Good morning, Your Honor. It's Frederick Carroll for Mr. Cervantes-Cardenas. Given the order that was produced by the Court asking the parties to address three specific cases, I would start with those cases in order. It's a wise choice. Thank you, Your Honor. With respect to the Lim and Liu cases, those cases did hold very unequivocally that profile evidence or evidence of drug courier profiles, which the Jesus Malverde card found somewhat in dispute but found near or around Mr. Cervantes-Cardenas, is not properly admissible. Both cases also held that that was harmless error. Those cases, however, are very distinguishable from the case at bar. First, with respect to the Lim case. Well, let me just stop before I get to harmless error and let's see how close those cases are. They did deal specifically with drug profiles, which is sort of an amalgam of factors, which tend to be sort of common factors, things that any one of us might do, you know, have a travel on a, you know, without having made an advance reservation. You know, we've all done that once in a while, you know, and then somebody dies or something, you know, and catch a plane at the last minute. Or having suitcases with hard shutters. I mean, they're all a list of factors that in and of themselves were not only innocuous, but they were common. I mean, they were in and of themselves, each of them was common. And I think what the cases stand for is a proposition that since a lot of these factors that make up the profile are common, you can't associate them with you can't infer as a substantive matter that they are evidence of crime. Whereas, as I understand the record here, people don't carry this card if they are not, if they are, I mean, I don't know what the record shows fully because I haven't seen the whole record, but my understanding is that people carry this card when they're about to, well, these are suggestions when they're about to smuggle drugs. It's sort of the way, I'm out of my waters here, but people sometimes have a St. Christopher's statue in their car. You don't see it, I don't think. I don't think people keep it in their den or someplace else. They keep it in their car. It's associated with cars, if I understand correctly. So that's evidence that drug couriers use this as a good luck charm. Sometimes that's true, Your Honor. Sometimes what is true, that drug couriers use this as a charm, Rob? Yes. Sometimes that's true. What are you holding? This one is one that I had in my briefcase, and it is such a card. Call security. You're holding up something. Is that part of the record? It is not part of the record. Was that what was introduced in trial? No, it was not. That's part of the problem I have with this case. Number one, we don't have a good copy of what was given to the jury in the record, do we? Well, I think Mr. Ray, he did provide that. It's a lousy copy to put it in the vernacular. I can't even read part of it. Was it translated when it went to the jury? It was translated on the stand. It was translated. And the distinguishing point that I want to make between this card and this one is the card that went to the jury isn't that card at all. It's an advertisement for tarot card reading. Exactly. So it's not a Jesus Malverde talisman. It's not a St. Christopher medal. It says, among other things, I cure sexual impotence, alcoholism, drug addiction. I clean up your spirit. I give you protections and talismans for all kinds of business. Like vitamin D. Exactly. This is an advertisement, and there's a little teeny picture up in the left-hand corner. It says spiritual counselor, and then it gives a name. Call me to get rid of failures, break the chains. I mean, it's not a Jesus Malverde card, is it? No. No, Your Honor, and that's exactly. I'm telegraphing this to the government so you can think about it for a while. It's not persuasive, but the government can try to make that argument. Yes, Your Honor. You're holding up a Jesus Malverde card. Right. If the government's right, that's the kind of thing that might suggest that it's the equivalent of a St. Christopher medal to help you get across with drugs. But it had Malverde's face on it, right? Or was that identified as Malverde's face? It was identified by the agent as Malverde's face. And did the government rely on it as such in arguing to the jury? Yes. Yes. I can't even see the face on the copy that I have. You know, this is one of the major failures of excerpts. We get 13th generation Xerox copies where you can't read or see anything. I don't know why people simply don't give us things that we can read and see, especially when it's the center of the case. I agree with you on that case, Your Honor. And part of the problem. I think that's a valid question. Why didn't you put a clean copy in the excerpts? So this is a centerpiece of your case. It was a mistake. There's no doubt about that. That's fair enough. Why don't you go on? Not to beat this dead horse, but we get lineup cases all the time where people are arguing the lineup is impermissibly suggestive. Everybody looks like an Eskimo or an African-American. You can't see any faces. It looks like one of those shadow puppets. It's amazing. Black outline on a white background. Tell your office, give us things we can see and read. I will. And part of the problem was that the piece of evidence, it was Government 7 that was introduced at trial, was not much better than the one that's before the Court today. Was it the original that was found on his wallet? It was, yes. What exactly was said about it? I'm sorry? What exactly was said about it? Actually, that gets to the end of my brief, which I think is one of the most important parts of this argument, was that without notice, without qualifications, on the stand as an expert, Agent Hall came and said that not only through his experience, but through his experience in state courts, that this always meant this image of this person purported to be Jesus Malverde meant that someone knew that there were drugs in the car. Did he say this image does that even when it's on an advertisement for a spiritual counselor? He was referring specifically to Government 7, which was the reference to a spiritual counselor. Was he asking if he had ever seen this variety of Jesus Malverde representation before on an ad for a tarot card reader? I don't think he was asked the exact question that the Court has put to me now, whether he had seen this exact tarot card advertisement, photocopied as it was, with an image of Malverde in the corner. He was asked whether he'd seen something like this, like the card that I held up, for demonstrative purposes. When you say was asked, you speak in the pastor's voice, but you mean the government asked him? The government asked him. That's correct. And so he identified this as something that would have been carried by somebody because he's a drug courier and he would carry it for good luck. Exactly. And the government then argued that to the jury? Yes. That was argued to the jury as evidence of knowledge that Mr. Cervantes Cardenas knew that there were drugs secreted in the fender of the car that was not registered to him. Why would he need a good luck charm for smugglers if he wasn't doing smuggling? That was the argument, basically. The argument was that he would use the good luck charm, hopefully, to get through the border. Unfortunately, Governments No. 7 doesn't mention the name Jesus Malverde anywhere on it. It doesn't mention marijuana. It doesn't mention smuggling. In fact, it mentions all the things that Judge Trott pointed out, cures for impotence and everything else under the sun. You've got a bad love life. Come see me and we'll try to help you through our mystical, magical powers. Nothing about any illegal activity whatsoever. Well, the only thing that comes close, it says, protections and talismans for all kinds of businesses. But that's so far removed. I mean, who knows? Exactly. That could very well protect me today in front of this panel. Break the chains of failure. And so when introduced as profile evidence, as it was by the government in this case, it was inadmissible and very much prejudiced Mr. Cervantes Cardenas. Well, I don't think it's profile evidence. I mean, I've never seen a profile evidence case that has this thing. I mean, it was not introduced as profile evidence. It was simply introduced to shore up the idea that he was a smuggler. It was added as one of the factors that this is what drug players do. Why is this different? We've had all kinds of cases that say if you're carrying a gun, it means something. If you have lots of money, it means something. Those are all indicia of the crime charged. Circumstantial, of course, but nonetheless, we've held those are admissible. Certainly. If I'm charged with murdering Jews and I've got a Nazi flag in my pocket, what does that mean? It means that you're probably predisposed to at least dislike Jewish people. But unlike that kind of a scenario, here we've got a card that could mean a multiplicity of things, anything under the sun. Yeah, I don't disagree with you on that. And the cases that the court asked us, specifically Lim and Louie, we had in Louie a person who claimed to have figurines and did not, who claimed to have a relative with a store that would sell such figurines. No such store existed. And the relative had no idea that Mr. Louie was even coming, combined with a secretive compartment in the suitcases that the agents later found the heroin in. If we assume this was error, why wasn't it harmless error, given all the other evidence? Because the other evidence, according to Louie and Lim, was overwhelming. What was the other evidence here? The other evidence here was that he was nervous, that he'd crossed two days before. Where were the drugs? The drugs were in the fender of the car, in a secret compartment. A car that was not registered to him, that did not belong to him. Turned out that the registration that he obtained for the marquee from his friend Arnulfo was fraudulent. There was no evidence introduced that Mr. Cervantes knew that that registration for the car was fraudulent. The only evidence was that he said he was coming to work that day. I think you're out of time. I am out of time. We'll hear from the government. Good morning. May it please the Court. Mark Rahe for the United States. First of all, to address Judge Trott's concerns, this was about the best copy that I was able to get from the file, Your Honor. I took an exact replica of Government's Exhibit 7, made photostatic copies, and attached it to that Rule 28J letter. I mean, how did you send it in? What do you mean, how did I send it in? How did we get it? Well, Federal Express did a week ago. Well, this Court isn't in receipt of that Rule 28J? The problem is we get them, and then it gets faxed to us when you send it in so late. Is there any particular reason why you folks waited until a week before our argument to send it in? I think what we need to... Why it wasn't next such a record or sent in in time so we don't have to have it faxed to us? I apologize for the fact that... How do you imagine it's going to get from your hands to ours? You know, I feel I've done what I could do to make this a better record. I didn't write the brief. I didn't do the trial. When I was assigned to do this case and I turned my full attention to it, I myself was shocked that it wasn't in the excerpts of record. And that's why I made the effort to put that document in front of the Court. I thought when I Federal Expressed it a week ahead of time... You're blaming your predecessor in the U.S. Attorney's Office. No, I'm not blaming it at all. Did you give us a translation of it when you sent it in? No, there's no. And that's another interesting thing. This wasn't translated, Your Honor. The whole significance of this card has nothing to do with what's written on it. It's the image. And, in fact, when you look at when the document was actually introduced, one of the objections was this is a Spanish document. So it wasn't translated. And another thing is there is no such thing as a, like a preordained, only one form of an official Jesus Malverde card. How do we know that? Because that's exactly what the agent testified to. Well, this is an advertisement. Do you know what it says? It's for tarot card, yeah, absolutely, about alcoholism. Can you read it? Have you had it translated for you? I could, but I don't think I have because, honestly, I don't think it would. That was never part of our case, and that's not what we're relying on. I mean, your position is that what he had it for was not the advertising but the picture. Exactly. This was a way for him to carry a picture of the patron saint of smugglers and maybe have it pretend to be an advertising or something. Absolutely. But what mattered was the picture. That was your case. And that sort of puts squarely the question of the Kofar cases and also puts squarely the question of prejudice if there was error because you did rely, I mean, your predecessor did rely. I mean, your very point was what mattered in that card was the picture. Exactly. And nobody would carry that card or, you know, the carrying the card is closely associated with smugglers and he would have had no reason to carry the card if he weren't trying to get good luck for his smuggling operation. That is our relevance theory in a nutshell, exactly. That is it. And I guess that raises the question of how you deal with our Kofar cases. You sort of understand the analogy or the problem. Absolutely. I mean, anybody can carry a card. It's not like a gun. It's not even like large quantities of money. You know, I don't think most people carry large quantities of money anymore. They have credit cards and so on. So you can, if you're carrying large wads of cash, if you've got guns, that can certainly suggest a drug operation. But for all we know, other people carry, I mean, Jesus Malverde's amulets as well, right? I mean, I don't know. The fact is, counsel, that there is a province in Mexico in which Malverde is known primarily as the patron saint of the poor. Is that not true? From my understanding. Was any evidence introduced about the role of Malverde in Mexico in this case? Whatever other than the officer's testimony that drug smugglers sometimes carry Malverde images? I do not believe it was. None at all? No. Is this case different if this man came from the province in which Malverde is not the patron saint of smugglers, but rather the patron saint of the poor, not, of course, officially recognized by the social leader instance? Your Honor, I don't think it does change it. All these concerns go to the weight of the evidence. Why would that make a difference if this person is a – that's an item commonly carried by persons from that province who are not engaged in criminal activity? Because that would go to the weight of the evidence and not its admissibility, Your Honor. You're going to make it an affirmative defense to the notion that if you carry any kind of a symbol which is found on drug smugglers, you have to then – you've made that into an affirmative defense that I'm not one of those persons who have it for the other purposes. Perhaps, Your Honor. But in this case – And isn't that exactly what drug profiling is about? In the only – because you put on no evidence at all other than the conclusion of the officer that he from time to time, that officers from time to time find that image on drug smugglers. We put not only time to time, but that he frequently finds that image. Okay. Frequently find that on them. Exactly. They probably also frequently found St. Christopher medals in their car. That's not in the record, Your Honor. It's up to the defense to bring that information out as well. Well, you're making an affirmative defense out of something which is a profile item. That is, there was no evidence in this record that he personally – anything about his personality in which he – no foundation to show that he carried this other than that he had drugs. And that that would prove that he knew he had drugs. He had this image in his wallet. He denied even recognizing it when he was asked on cross. At that point, if he believed he was just holding it up as the patron saint of the poor, that evidence would have come out, Your Honor. It did not. All of these arguments go to the weight. That is our position here. I don't know of any rule of law – Why wouldn't you have the same argument in Lim and Louie? You say, well, you know, hard suitcases go to the weight. I mean, all those factors in the profile go to weight. We said very clearly cannot be used as substantive evidence. Maybe that argument wasn't raised, but I think Your Honor actually touched on it. This is a highly specific piece of information. This isn't just this symbol. It could have been a green flower that's often found on drug smugglers. No. It's a specific image that officers testify as the patron saint of smugglers. That gets to Judge McKay's question. We don't know. I mean, if somebody comes from a particular – I mean, I didn't even know there was a province in Mexico that – it may have been in the record. I missed it. But presumably other people carry this, and perhaps if you come from the province where Malverde is viewed as the patron saint of the poor, there may be lots of people running out on the street carrying because they're poor and they want to improve their fortune. So it's a little difficult to tell whether this is like a hardback shell suitcase or whether it's like carrying a gun. It's like robbing it. It depends on which end of the gun you're looking at. Absolutely, Your Honor. But see, here we have one officer 12 years experience, another officer 18 years of experience testing. He was experienced on defendant at the trial. It was a little sneaky. I don't think it was, Your Honor. I'm glad you brought that up as well, Your Honor, because this whole – there's so much talk about notice in this case. First of all, this document, as supplemental – Stick around for the next case. We'll know this. Supplemental excerpt of record, pages 2 and 3, the prosecutor represented that she turned this card over in discovery, the first installment of discovery. Defense lawyer represented that he had received it in enough time to have it translated. He also acknowledges that much in a footnote in his brief. Not only that, this is before the trial has even begun. Supplemental excerpt of record, page 2, the prosecutor spells out the exact way that this evidence was going to be used. She said, I'm going to call an agent that's going to testify that he's frequently found this image on drug smugglers, and that's – I want to give the defense warning. That I frequently found it on drug smugglers. And I think, if I remember correctly from the briefs, they put the issue of the qualifications of this officer to testify on that point in issue, not just objecting to the evidence itself, but his expert authority about why that would be any more evidence of drug – knowledge of drugs than a St. Christopher medal would be, which would be found on numerous people. And that's a good point. And they have evidence. Because there's nothing that you put in by way of foundation. Wasn't there an objection to his ability to testify as an expert on this issue? Yeah. And the court overruled it. The court overruled it. Yeah. The court accepted that. And then you did not present any evidence to lay the foundation for his expertise. Oh, I disagree, Your Honor. He stated that he's had extensive experience in drug investigations for 18 years. His experience was that he frequently found that image on drug smugglers, period. Not period. And that he interviewed those arrestees and that he interviewed his fellow officers and he asked them what the significance was. And what's the most revealing point? Here we are on appeal. Is there any claim that the foundation was insufficient? No. Is there any claim that these officers weren't qualified to give this testimony? No. I think that has to be taken as a fact now. And the only questions are the relevance and the prejudice. You know, I have to go back to where I started. I think the problem is this really isn't a Jesus Malverde image as such. It's an advertisement. So that attenuates the relevance of the evidence more than if you had, you know, a straight card in the guy's wallet. Excerpt of record, page 71, Your Honor. Here's Special Agent Lowenthal's quote. Usually I see it on their person and in different forms, pictures, medallions, on cards and vehicles. From that testimony, you can infer that there is not just one official image of Jesus Malverde. But he doesn't say that it's on advertisements for tarot card reading. I just read the text and there's nothing in the text whatsoever that suggests that this image on there is in connection with smuggling drugs. But just because he doesn't put that in a non-exclusive list of examples, does that mean it's not possible? He's not trying desperately to help you when you're fighting him. No. Well, I get the feeling he's having trouble with that. You know, our whole point is that in the 2018 He's mistaken, but he is trying to help you. You know, one of the cases we sent, it was on a phone card. I think that was the Rivas case. You know, there may be only four or five, four cases that I've found, aside from the Eighth Circuit's Bustos decision. One of them, it's on a necklace. Another one, it's on the back of a phone card. Let me ask you a slightly related question, which I'm sure will be of particular interest to Judge Trott, because another case we're on. Do you think there are First Amendment implications in holding that somebody's use of a religious symbol or perhaps literature or something of that sort, that you can infer from that evidence of criminal intent? I don't, Your Honor, and I rely on two authorities for that. First of all, Supreme Court in Wisconsin v. Mitchell, at 508 U.S. 476, at page 489, the Court said, a very short statement, quote, The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. And in that case, that had to do with a Wisconsin statute that gave an enhancement when crimes were motivated by racial animus. And one of the arguments that had been presented was, well, won't this chill religious expression? And the Supreme Court specifically said, no, in that situation, it's too attenuated. They said, we have to hypothesize a situation where somebody with bigoted opinion will somehow be afraid to express that in the event he later gets arrested for a crime in which that would be relevant. Wisconsin v. Mitchell? Mitchell, correct, Your Honor. It's 508 U.S. 476. And the quote I read was from page 489. Now, the Ninth Circuit case was frequently or well-discussed at the Curtin-Ombank argument. That's United States v. Allen. 341 F. 3rd, 870, footnote 23. And that was a skinhead Nazi propaganda case. This Court specifically rejected a First Amendment argument citing the Wisconsin v. Mitchell. And that was another case where the fact that that defendant had Nazi literature What about Szymanowicz? I read about that one, too. I know that has to go to the whole. I think Szymanowicz is distinguished, Your Honor, because in that case, the disputed evidence didn't go to an element of the offense. You read my dissent. I read your dissent, Your Honor. And I listened to that argument. It's a fascinating issue, but I don't believe that Szymanowicz is on par with here. Here, we said from the get-go there's only one thing this is relevant, probative of, and that's knowledge. Knowledge is an essential element of both of the charges in this case. I think that's sort of the biggest. Well, there's no doubt about the fact that if you establish a close enough connection between the item and smuggling, it does tend to prove knowledge. And this is why it's so damaging if it is — if there was an error. I mean, I don't think there can be any doubt because this is a way of looking into the defendant's mind. And that's exactly what the government was trying to do. Yes. So I guess the question is whether or not the evidence of the one officer. Well, and two, and it's interesting, too, because the first officer he cross-examined seriously about, well, this is a bad picture, isn't it? This isn't such a clear image. Are you sure this is Jesus Malverde? That was Special Agent Lowenthal. And that's why we also called then Special Agent Hall. And, in fact, Judge Whalen, I can't remember the citation of the record off the top of my head, but he specifically said the reason that Hall's testimony wasn't cumulative was because the defense had raised a doubt as to the identification of the image. That's why we called Hall, and Hall said, I've recognized that. It's clear to me. Okay. If I can make one more point, Your Honor, on drug courier profile, because I know that's a question that came up. Even if you find this as drug courier profile, I still think it was properly admitted, and that's under the Beltran-Rios exception. In Louie, or I don't know if I'm pronouncing it correctly, the court ---- Provodal evidence to counter defense theory? Correct, Your Honor. And they cite to a case, Beltran-Rios, where it says if a defendant opens the door by emphasizing his poverty, the government is entitled to bring profile. In this case, the district court specifically said, Government, you can't put this in in your case in chief. And it was called in rebuttal. And the defense took the stand, and I think a fair reading of the evidence was that he exactly took the route of emphasizing his poverty. It came out that he was 24 years old, still living with his grandmother and brother in a house in Mexicali with no phone, that he only had two years of education. They also brought out the fact that he had no Social Security card, and that's why he had to cross the border to get work. He said, I often come to work in the fields. I either pick cantaloupes or onions, or I sweep storefronts. And, you know, and in closing argument, transcript of the record 307, that that was the exact thing that the defense argued. It's a quote. Mr. Cervantes is a simple man who lived out in the sticks outside of Mexicali with his grandmother and brother. He has had two years of education, barely reads and writes. In the Beltran-Rios case, and that's 878 F. Second 1208, the defense characterized the defendant as a poor, simple farmer. I mean, there's the uncanny similarities between that and this case. I think I wanted to make sure I noted for this Court, because even if you find drug courier profile in this case, it was after the defense put an issue with a lot of heavy testimony, or at least heavily emphasizing the fact of his poverty, I think that we would come under the Beltran-Rios exception. If you don't, why is this not harmful error? That, Your Honor, I know we didn't argue harmlessness in our brief, because we have taken the position that it should be plain error. But I do believe that we preserved the argument that it wasn't, it didn't affect his substantial rights, because he's the driver sole occupant of a vehicle with 100 pounds of marijuana, and that he gave it to the driver, and that he gave it to the driver, and that he gave it to the driver. So I believe that's a very substantial issue. If we've got a subsequent case where that's a very substantial issue, where knowledge of the presence, although it's a civil case and not a criminal case, but the underlying facts deal with a very serious problem that seems to verify from the testimony of that case that persons are driving some vehicles without knowledge of the presence of concealed drugs. Now, that's got other set of circumstances. But, therefore, the knowledge of its presence becomes critical, particularly when he's not the owner of the vehicle, and in terms of his knowledge, about all you've got's a little nervousness, which characterizes me every time I'm talked to by anybody with a badge. I understand that, Your Honor. But I actually think I would characterize the evidence a little, it's no surprise, but I'd characterize it as a little better than that. It wasn't just that he was driver sole occupant, and it wasn't just some nervousness. I mean, there was overly talkative, shaking hands, all of the officers who testified, who interacted with him, and mine are too early. I won't deny that. You don't even have a badge. I'm not terribly impressed with that kind of evidence, the nervousness, because we, well, never mind, that's an editorial comment. He also gave inconsistent statements. The secondary inspection. What this amounts to is essentially a confession in his wallet that he's a drug smuggler, when all you have is personality behaviors in the course of an interview to show knowledge of the presence of drugs. But that kind of evidence has been accepted in this circuit for 20 years at least. I mean, that's what happens when we don't have confession. I understand, but in any event, it isn't terribly heavy evidence. It may be enough, but it isn't terribly heavy. Well, I would say, Your Honor, maybe individually, but taken together. And another thing I'd point out is his testimony. He testifies. He can't even remember the name of the company that he goes to work for, but he claims that the guy who set him up did. This Court has held that facial implausibilities are also further evidence of guilt. And not only that, he lied about not having driven that vehicle before. This was on June 30th. He said it was the first time in the text records, plus the evidence of the officer said, you know what, I even recognized him. He was here two or three days before. So it's not just the nervousness. You have the inconsistent statements, and you have his own implausible testimony. Even though it's not the best copy, thank you for sending it to us. At least we can see what we're dealing with. I wish he was here, Your Honor. Okay. Thank you. Would you like a minute for rebuttal, or have you had enough? If I may. Always a mistake, but go ahead. Just briefly, since I didn't have an opportunity to address the First Amendment concerns that the Court brought up in the order and that the Court asked Mr. There are very distinguishable facts from the Curtin case. And in First Amendment cases, a tarot card that purports to cure everything under the sun with perhaps an iconic image of a cultural or religious figure, a patron saint of Sinaloa and the poor, could have a multitude, a plethora of swastika in someone's back pocket has pretty much one meaning. Or images and or stories on a person's personal digital assistant of child pornography is also fairly unequivocal as to what that means. Maybe he's a researcher. Maybe he is a researcher. In this case, as I think Maybe he's working for NBC. It's possible. And perhaps he's an attorney researching a case just like Curtin. But the point is, and I think Your Honor properly pointed it out, that this was not a man who was looking to have relations with a 42-year-old woman posing as a 13- or 14-year-old girl. This was a person who had distinct and well-referenced stories, images of child pornography. Well, what about Beltran-Rios? The other side says, look, this is an unusual situation. It's covered in Beltran-Rios. In Beltran-Rios, 872 Fed Second or whatever it was, we said that this kind of evidence is admissible once the defendant puts an issue on the table as to exactly what was going on in his mind. And it's perfectly appropriate on rebuttal then to bring it in. And that seems to be what happened here. The trial judge kept it out until the issue was joined. So what's the matter with Beltran-Rios? Well, I don't think we put in poverty evidence, Your Honor, to be quite frank. Well, no, you didn't put in poverty evidence, but you put in a defense that was, I didn't know, I'm not a smuggler and I had nothing to do with it. That's the equivalent of what was in Beltran-Rios. It's an affirmative defense, to use Judge McKay's terms. Have you read Beltran-Rios? I have read Beltran-Rios. Why does that work here? I don't think it works here. I mean, first of all, simply to say, as the government did in their response brief, that, and I think Mr. Rahe was arguing, that a defendant who takes the stand and asserts his or her innocence doesn't necessarily, I think, fairly put into question the issue. Well, there are a raft of cases that say once the defense is joined like that, then the government on rebuttal is allowed to attack that particular aspect of the case. Certainly. His credibility was certainly at issue once he took the stand. There's no question about that. Okay. Thank you very much. Thank you. The case is now submitted.
judges: McKay, Kozinski, Trott